The STATE of Ohio, Appellee,

v.

GEITER, Appellant.

[Cite as *State v. Geiter*, 190 Ohio App.3d 541, 2010-Ohio-6017.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 94015.

Decided Dec. 9, 2010.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Anne Bringman, Assistant Prosecuting Attorney, for appellee.

Jonathan N. Garver, for appellant.

KENNETH A. ROCCO, Presiding Judge.

{¶ 1} Defendant-appellant, Shawn Geiter, appeals from the trial court's order denying his motion to suppress evidence; a jury subsequently convicted Geiter of drug possession.

{¶ 2} Geiter presents one assignment of error. He argues that the trial court incorrectly denied his motion to suppress evidence, because the facts failed to justify the application of the "good faith" exception to the exclusionary rule.

{¶ 3} Upon a review of the record, this court finds that the trial court committed no error. Therefore, Geiter's argument is rejected, and the trial court's order is affirmed.

{¶ 4} The state presented the testimony of Cleveland police officer Vasile Nan at the hearing on Geiter's motion. On the afternoon of October 4, 2008, Nan was on routine patrol in his zone car. His car was not equipped with a computer; thus, he relied upon information he obtained from the police dispatcher.

{¶ 5} As was his regular practice, Nan performed a random "check on a plate" of a car in front of him. Nan testified, "Initially, the dispatcher said [it] checked okay and gave the description of the vehicle."

{¶ 6} However, "[a] few seconds later, she came back and stated that [the plate] was showing as a stolen vehicle in our local system, meaning the Cleveland [one]."

{¶ 7} Based upon that information, Nan decided to conduct a traffic stop. Nan testified that the vehicle, which Geiter drove, "pulled into the parking lot of the rec center" in compliance with Nan's signal to stop.

{¶ 8} As Nan approached the driver's side on foot, Geiter "rolled the window down." Nan stated that he asked Geiter who the car belonged to and "noticed at this point there was a strong odor of burned marijuana coming from inside the vehicle." Nan arrested Geiter at once; several other officers arrived on the scene to assist him.

{¶ 9} Geiter was handcuffed, patted down, and placed in the zone car. The pat-down search yielded "suspected crack cocaine." Nan and his colleagues "looked around the area [Geiter] was sitting in, located some burned marijuana and also under the seat of the driver [Nan] found a nine millimeter High Point pistol."

{¶ 10} Nan further testified that approximately 20 minutes later, "[o]nce everything settled down," he "requested [his] dispatcher to do a search of the reports [about the vehicle], and she found the report of the recovery," i.e., Nan learned that the vehicle Geiter drove was his mother's and that although the vehicle had been stolen in July 2008, Geiter's mother had recovered it the same day.

{¶ 11} Nan explained, "And somehow, when [the Cleveland police officers] did the recovery [report], the city part was not clicked to clear the vehicle as a stolen vehicle, and it was still active." Nan conceded that at the time of the traffic stop,

the other two police databases, "NCIC and LEADS," showed accurate information, viz., that the vehicle was "recovered" by its owner. The evidence presented at the hearing further showed that Geiter's mother arrived at the scene to retrieve her car before the officers transported Geiter to the station.

{¶ 12} Geiter later was indicted on four counts: carrying a concealed weapon, possession of drugs, drug trafficking, and possession of criminal tools. Each count contained at least one forfeiture specification, and counts two and three also contained a firearm specification.

{¶ 13} Geiter filed a motion to suppress evidence, but the trial court denied his motion after conducting a hearing. The trial court explained its reasoning as follows:

{¶ 14} "[In] examining the facts known at the moment of the arrest. Information an officer receives over police radio must ordinarily be considered trustworthy.

{¶ 15} "Moreover, a mistake of fact will not lead to the suppression of evidence where the mistake was understandable and a reasonable response to the situation facing the officer.

{¶ 16} "Therefore, I do make the finding that the actual stop of the vehicle in this case is not unlawful.

{¶ 17} " * * * I don't find the police acted in bad faith in pulling the vehicle over based on what he was told from dispatch.

{¶ 18} "I also don't find he acted improperly when he * * * took the defendant out of the vehicle and patted him down for his own safety.

{¶ 19} " * * * [A]t that point in time, he found the crack cocaine that was on the defendant."

{¶ 20} The trial court further explained:

{¶ 21} "[U]pon finding out that the vehicle wasn't stolen, the police officer in this matter had already removed the Defendant from the car. [Nan] had already smelled the marijuana emanating from the car, and they had already searched the vehicle and also searched the Defendant and found * * * cocaine on the Defendant and then they found the gun in the car."

{¶ 22} The court concluded its analysis by stating that the police search of the area in which Geiter was sitting also was permissible; Nan by that time had "evidence of [the existence of] criminal activity because there was marijuana emanating from the vehicle."

{¶ 23} After the trial court's denial of his motion to suppress evidence, Geiter elected to try the forfeiture specifications to the bench while the rest of his case

proceeded to a jury trial. At the conclusion of the state's case-in-chief, the trial court granted Geiter's motion for acquittal on counts three and four.

{¶ 24} The jury ultimately found Geiter not guilty on count one, but guilty on count two, drug possession. The trial court also found Geiter not guilty on most of the forfeiture specifications, but did order forfeiture of the gun. The trial court eventually sentenced Geiter to one year of conditional community-control sanctions.

{¶ 25} In this appeal, Geiter challenges the trial court's denial of his motion to suppress evidence. His assignment of error states:

{¶ 26} "I. The trial court violated Appellant's rights under the Fourth Amendment to the Constitution of the United States and Article I, Section 10 of the Constitution of the State of Ohio by denying Appellant's motion to suppress evidence."

{¶ 27} Geiter argues that the trial court improperly denied his motion to suppress evidence because the "good faith" exception to the exclusionary rule should not apply in circumstances in which the police themselves were responsible for the error that led to the warrantless stop of the vehicle he drove. Although Geiter's argument is clever, this court disagrees.

{¶ 28} The Ohio Supreme Court set forth the applicable analysis of the trial court's decision on a motion to suppress evidence as follows:

{¶ 29} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶ 30} In *State v. Burke*, 188 Ohio App.3d 777, 2010-Ohio-3597, 936 N.E.2d 1019, after quoting the foregoing, this court additionally made the following comments:

{¶ 31} "Initially, we observe that an investigative stop of a vehicle is permissible if a police officer has a reasonable and articulable suspicion that the person stopped may be involved in criminal activity. See *Terry v. Ohio* (1968), 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889. * * *

{¶ 32} "The Fourth Amendment to the United States Constitution provides protection against unreasonable searches and seizures. Searches conducted without a warrant are per se unreasonable, subject to a few 'jealously and carefully drawn' exceptions. *State v. Smith,* 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶ 10, citing *Jones v. United States* (1958), 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514, and *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 454–455, 91 S.Ct. 2022, 29 L.Ed.2d 564.

{¶ 33} "One of the exceptions to the warrant requirement is a search incident to a lawful arrest, 'which allows officers to conduct a search that includes an arrestee's person and the area within the arrestee's immediate control.' *Smith,* supra, at ¶ 11, citing *Chimel v. California* (1969), 395 U.S. 752, 762–763, 89 S.Ct. 2034, 23 L.Ed.2d 685. 'The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations.' *Arizona v. Gant* (2009), 556 U.S. ——, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485. In *Arizona v. Gant,* the court held that an officer may search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search or when it is reasonable to believe that the vehicle contains evidence relevant to the offense of arrest. Id.

{¶ 34} "In this case, a search of the vehicle incident to arrest was impermissible because Burke was handcuffed and under arrest at the time of the search and the officer had no reason to believe that the vehicle contained evidence of the offense of arrest, i.e., open container. Nevertheless, alternative grounds existed upon which a warrantless search could be conducted.

{¶ 35} "A warrantless search of a vehicle may be justified when an officer has probable cause to believe that the vehicle contains contraband based upon the well-established automobile exception to the warrant requirement. *State v. Moore* (2000), 90 Ohio St.3d 47, 52, 734 N.E.2d 804. '[T]he search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest.' *Chambers v. Maroney* (1970), 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, citing *Carroll v. United States* (1925), 267 U.S. 132, 158–159, 45 S.Ct. 280, 69 L.Ed. 543. Under this exception, when an officer has probable cause to believe that a person has been smoking marijuana based on the odor of marijuana emanating from the vehicle, a warrantless search is permissible. *Moore; State v. Hopper,* Cuyahoga App. Nos. 91269 and 91327, 2009-Ohio-2711, 2009 WL 1623105; see also *State v. Farris,* 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985 (recognizing that the scope of the search does not necessarily extend to the trunk of the vehicle).

{¶ 36} "In this case, [the officer] testified that he detected a strong odor of marijuana emanating from the vehicle. This alone provided the officer with probable cause to search the passenger compartment of the vehicle without a warrant. Accordingly, we find that a lawful search of the vehicle was conducted in this case." *Burke*, 188 Ohio App.3d 777, 2010-Ohio-3597, 936 N.E.2d 1019, ¶ 16–21.

{¶ 37} Geiter seeks to circumvent the application of the foregoing to the facts of this case by asserting that Nan's initial *stop* was illegal. He claims that the trial court improperly determined that the "good faith" exception to the exclusionary rule applied. To the contrary, Geiter argues, Nan lacked a good-faith basis for conducting the stop, because it was Nan's own department's negligence that wrongly still included his mother's car in the Cleveland police "stolen vehicle" database. As authority for his position, Geiter cites *Herring v. United States* (2009), 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496.

{¶ 38} In examining the good-faith exception to a search of a premises conducted without a legal warrant, the court stated as follows in *State v. Jacob*, 185 Ohio App.3d 408, 2009-Ohio-7048, 924 N.E.2d 410, at ¶ 27:

{¶ 39} "The Supreme Court established the 'good faith' exception to the exclusionary rule in *United States v. Leon* (1984), 468 U.S. 897, 918–923, 926, 104 S.Ct. 3405, 82 L.Ed.2d 677. In doing so, the Supreme Court *declined* to apply the exclusionary rule when police reasonably and in good faith relied upon a warrant *subsequently* declared to be invalid, because excluding evidence under such circumstances *would not deter* police misconduct. Id. at 922, 104 S.Ct. 3405, 82 L.Ed.2d 677. The good-faith inquiry established in *Leon* is confined to the objectively ascertainable question of whether a reasonably well-trained officer would have known that the search was illegal despite the issuance of a warrant; subjective beliefs of the officer are not to be considered. *Leon*, 468 U.S. at 922, 104 S.Ct. 3405, 82 L.Ed.2d 677, fn. 23; *State v. Klosterman* (1996), 114 Ohio App.3d 327, 332, 683 N.E.2d 100. The Supreme Court now prefers to discuss this issue in terms of an officer's 'objectively reasonable reliance' on a warrant, commenting that the term 'good faith' has perhaps been confusing. *Herring v. United States* (2009), 555 U.S. [135], 129 S.Ct. 695, 172 L.Ed.2d 496." (Emphasis added.)

{¶ 40} Moreover, the Twelfth Ohio Appellate District also examined the holding of *Herring* and observed:

{¶ 41} " 'The fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies' *Herrings* [sic] *v. United States* (2009) [555] U.S. [135], 129 S.Ct. 695, 700, 172 L.Ed.2d 496. The United States Supreme Court has 'repeatedly

rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation.' Id. 'To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.' Id. [555 U.S. 135, 129 S.Ct.] at 702 [172 L.Ed.2d 496].

{¶ 42} "At its core, the good faith exception recognizes that the purpose of the exclusionary rule, to deter unlawful police conduct, cannot be furthered by excluding evidence seized *by an officer who had reasonable grounds* to believe the search warrant was *properly* issued. See *Leon* at 919, 923 [104 S.Ct. 3405, 82 L.Ed.2d 677]. Thus, 'evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may be *properly charged* with knowledge, that the search was unconstitutional under the Fourth Amendment.' *Herrings* [sic], [555 U.S. 135] 129 S.Ct. at 701 [172 L.Ed.2d 496]; *Leon*, 468 U.S. at 919 [104 S.Ct. 3405, 82 L.Ed.2d 677]." (Emphasis added.) *State v. Cummins*, Clinton App. Nos. CA2009–06–004 and CA2009–06–005, 2009-Ohio-6415, ¶ 25–29.

{¶ 43} For purposes of this case, the word "stop" may be substituted for the word "search" in the foregoing opinions. In applying the relevant analysis, therefore, the trial court properly focused on Nan's objective reliance on the information conveyed to him via police dispatch. Nan had no reason to question the reliability of the local system's information, particularly to justify a minimally intrusive traffic stop. *State v. Commins*, 2009-Ohio-6415, 2009 WL 4574886; cf. *State v. Jacob*, 185 Ohio App.3d 408, 2009-Ohio-7048, 924 N.E.2d 410.

{¶ 44} Applying the exclusionary rule under these circumstances would not deter "unlawful police conduct" because Nan himself could not know that his conduct in stopping a car to investigate possible criminal activity would subsequently prove to lack a foundation. In fact, *Terry v. Ohio* (1968), 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889, precisely permits such an action.

{¶ 45} Consequently, Geiter's assignment of error is overruled.

{¶ 46} The trial court's order and Geiter's conviction are affirmed.

Judgment affirmed.

SWEENEY, J., concurs.

STEWART, J., concurs in judgment only.

SWEENEY, J., retired, of the Eighth District Court of Appeals, sitting by assignment.