[Cite as *State v. Walker*, 2026-Ohio-1767.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 115280 |
| v. | : | |
| ROBERT WALKER, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 14, 2026

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-694420-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Courtney Kirven, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Robert Walker ("Walker") appeals his convictions and asks this court to vacate his convictions and remand to the trial court for a new trial. We affirm.

{¶ 2} Walker was charged with seven counts including having weapons while under disability, a third-degree felony, in violation of R.C. 2923.13(A)(3); carrying a concealed weapon, a fourth-degree felony, in violation of R.C. 2923.12(A)(2); two counts of improperly handling firearms in a motor vehicle, fourth- and fifth-degree felonies, in violation of R.C. 2923.16(B) and (D)(1); obstructing official business, a second-degree misdemeanor, in violation of R.C. 2921.31(A); and two counts of driving while under the influence of alcohol or drugs, first-degree misdemeanors, in violation of R.C. 4511.19(A)(1)(A) and (J)(VIII)(II). After a jury trial, Walker was found not guilty of obstructing official business but guilty of all remaining counts. Walker was sentenced to 18 months of community-control sanctions.

## I. Facts and Procedural History

{¶ 3} On January 8, 2025, prior to Walker's trial, he filed a motion to suppress arguing that there was no lawful cause to stop and detain him, impound and search his vehicle, and arrest him without a warrant. The trial court held a hearing on the motion on February 18, 2025. On March 10, 2025, the trial court denied Walker's motion to suppress. Journal Entry No. 193182367 (Mar. 10, 2025). The matter proceeded to a jury trial.

{¶ 4} At Walker's trial, Officer Jearod Woods ("Ofc. Woods"), of the Cleveland Police Department, testified that on August 24, 2024, he initiated a traffic stop after observing Walker driving a vehicle with dark-window tint and failing to yield to a traffic light. Tr. 194-195. As Ofc. Woods pursued Walker's vehicle, Walker

made a U-turn, parked in a parking spot, and got out of his vehicle. Tr. 196. Ofc. Woods turned his lights and sirens on his cruiser and parked. Walker then began walking towards Ofc. Woods. Ofc. Woods instructed Walker to get out of the street, and Walker eventually walked over to the grass area. *Id.*

{¶ 5} During this traffic stop, Ofc. Woods determined that Walker failed to comply with his commands, informing Walker not to approach the officers. Tr. 202. During his testimony, Ofc. Woods was asked if he responded differently to Walker because Walker exited his vehicle. Ofc. Woods stated, "Instead of a normal, hey, this is the reason for the stop, you know, introducing ourselves, everything like that, then we would go and detain him because technically at this point, he's obstructing what we're trying to do." Tr. 201. He continued, "Well, I was trying to tell him the reason for the stop. I mean if he would still have been in the car it would have been just a traffic violation." *Id.* Ofc. Woods explained that Walker told him that he lived in the apartments at the corner while flailing his arms. As a result of Walker's noncompliance, Ofc. Woods detained Walker and patted him down for any weapons.

{¶ 6} Next, according to his testimony, Ofc. Woods asked Walker if he had anything in his car because Walker smelled like marijuana. At this point in the trial, the video-surveillance footage of the arrest was observed, and Walker stated that the officers could keep the gun and the weed if they wrote him a ticket. Tr. 204. The officers searched Walker's vehicle and found a loaded gun under the driver's seat and marijuana in the center console.

{¶ 7} Walker explained to Ofc. Woods that his girlfriend bought him the gun and that he had just been smoking marijuana. Tr. 209. After detaining Walker, the officers took him to the hospital so a "chemical" test could be administered to Walker. *Id.* Dr. Luigino Apollonio ("Dr. Apollonio"), the chief toxicologist at the Cuyahoga County Medical Examiner's Office, testified that he reviewed Walker's toxicology report, which demonstrated that Walker had marijuana and cocaine in his system. Tr. 187.

{¶ 8} At the end of the State's case, the State sought to admit two prior journal entries of Walker's plea in Cuyahoga C.P. No. CR-14-590759-A, where Walker pleaded guilty to drug possession. Tr. 243. The trial court asked if there were any objections to the proposed exhibits. Walker's counsel initially stated: "No, Judge, it's videos and that was shown, the gun and the report." Tr. 244. After the State described in detail what exhibits it was admitting, the trial court again asked Walker's counsel, "[I]s there an objection to any of the State's proposed exhibits?" Tr. 245. To which, Walker's trial counsel replied, "No." *Id.* The trial court responded: "At this time all of the exhibits proposed by the State of Ohio will be deemed admitted." *Id.*

{¶ 9} Once the exhibits were admitted, Walker moved for a Crim.R. 29 motion of acquittal. The State objected, stating:

> Just based off the testimony and exhibits, the State does feel it's met its burden, provided enough evidence to get this to the trier of fact, to the jury. First just briefly for the having weapons charge, we have a stipulated to prior conviction for Mr. Walker, we've had testimony that he had the firearm in his possession in his car. He was the sole driver,

it was under his seat.  We also have several statements from him indicating that possession that the jury can infer from where he stated my weed and gun, he's stating that he was attempting to protect himself.  Even though there are statements that his girlfriend purchased the firearm, there is evidence that he was in possession of it at that point.

We know it was readily at hand in regards to the carrying concealed weapons.  It was under his seat in his vehicle immediately within his reach.  In regards to improper handling charges, 3 and 4, we know Mr. Walker was operating the car, that he brought it to a stop, he was the driver.  We know that that firearm was located in the vehicle.

We also heard testimony that he was under the influence while operating that vehicle.  That firearm, through observation from Officer Woods as well as testimony from Dr. Apollonio, that he was above the legal limit.  And we also observed video of Mr. Walker obstructing Officer Woods and his partner at that time, immediately getting out of his car against his orders, approaching officers, getting in their personal space, reaching for his pockets.  And furthering that stop and their interaction with him that impeded their duties.

So, your Honor, viewing the light most favorable to the State, I do believe that we did meet our burden to get us to the jury for consideration.

Tr. 245-247.

{¶ 10} The trial court denied Walker's Crim.R. 29 motion.  The trial court then asked if the stipulation to Walker's prior offense should be in the jury instructions or just something that the trial court can verbally advise the jury. Tr. 248.  Walker's trial counsel stated: "I mean, I guess I should have mentioned this in my Rule 29 motion, but the prosecutor never entered it into evidence.  We had a stipulation, but —."  *Id.*  The State interrupted, stating: "Your Honor, my understanding is with the stipulation was to the identity and the contents of it as a whole.  It's a self-authenticating journal entry."  *Id.*  However, Walker's counsel

countered by stating it was supposed to be done in front of the jury. The State responded, stating:

> My understanding is we did not have to, it's a stipulated-to document that they would receive as an exhibit. We also heard testimony that he has the prior conviction as well through Officer Woods. It's not a document that they would be receiving the information of itself for the first time. We've heard testimony, it's been stipulated to and it would be considered by the jury.

Tr. 248-249.

{¶ 11} The trial court responded: "We do have a stipulation as part of the record. And the certified copies of the plea and conviction were entered into evidence without objection from defense counsel." Tr. 249. Walker's trial counsel responded that he stipulated but it was never presented to the jury. *Id.* The trial court allowed Walker's trial counsel to renew his Crim.R. 29 motion to dismiss based upon the fact that the stipulation to the journal entries were never presented to the jury. He clarified that he objected to the admission of the entries, not their authentication. Tr. 253. The trial court, again, denied the motion. Tr. 254.

{¶ 12} The trial continued, and Walker testified that the police were never behind him. He parked his car at his home, exited the vehicle, and then he saw the police with guns and tasers pointed at him. Tr. 256. Walker also testified that his girlfriend previously used his car several times and she more than likely placed the gun under the seat. He testified that he was unaware the gun was in the car. He also claimed that he spoke with the FBI and Office of Professional Standards because the surveillance videos had been edited. He also testified that the toxicology report

stating that there was ten times the legal limit of marijuana in his system was incorrect.

{¶ 13} At the end of the trial, the jury found him guilty of all counts except for obstruction of official business, and Walker was sentenced to community-control sanctions. He filed this appeal, assigning four errors for our review.

> 1. The trial court erred by denying Appellant's motion to suppress in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Art. I, § 14 of the Ohio Constitution;
>
> 2. The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions;
>
> 3. Appellant's convictions are against the manifest weight of the evidence; and
>
> 4. The trial court erred by admitting the certified copies of the journal entries after the State rested its case and over defense objection.

We review the assignments of error out of order for ease of structure.

## II. Motion to Suppress

### A. Standard of Review

{¶ 14} "The Fourth and Fourteenth Amendments to the United States Constitution prohibit warrantless searches and seizures. Warrantless searches are per se unreasonable unless an exception applies." *State v. Crawford*, 2020-Ohio-268, ¶ 13 (8th Dist.), citing *Katz v. United States*, 389 U.S. 347, 357 (1967). "Evidence obtained from an unreasonable search or seizure must be suppressed." *Id.*, citing *Mapp v. Ohio*, 367 U.S. 643, 651 (1961).

{¶ 15} This court reviews a trial court's ruling on a motion to suppress under a mixed standard of review.

> "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility." *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). The reviewing court must accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. With respect to the trial court's conclusion of law, the reviewing court applies a de novo standard of review and decides whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

*Id.*, quoting *State v. Miller*, 2018-Ohio-4898, ¶ 22 (8th Dist.).

### B. Law and Analysis

{¶ 16} In Walker's first assignment of error, he argues that the trial court erred by denying his motion to suppress. Specifically, he claims that the search of his vehicle was not justified by any exception to the warrant requirement. Walker cites the Third District's decision in *State v. Eversole*, 2017-Ohio-8436 (3d Dist.), where the court held that "law enforcement may only search a vehicle incident to an OVI arrest when that law-enforcement officer has reason to believe, based on common-sense factors and the totality of the circumstances, that evidence of the offense of arrest is inside." *Id.* ¶ 28. The Third District reversed the trial court's judgment denying the appellant's motion to suppress.

{¶ 17} The decision in *Eversole* can be distinguished from the facts in the instant case. The appellant in *Eversole* was pulled over by police for committing traffic violations. Following a field sobriety test, the appellant was detained and put

into the police car. Following the detainment, the police searched the appellant's car and found heroin in the appellant's purse. The appellant filed a motion to suppress the evidence found in her purse. She argued that it was unreasonable for the police officers to search her vehicle incident to her arrest for OVI for evidence of that offense based on *Arizona v. Gant*, 556 U.S. 332 (2009).

> In *Gant*, the Supreme Court of the United States determined that "[p]olice may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if it is reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest." *Gant* at syllabus.

*Id.* at ¶ 4.

{¶ 18} However, the facts in this case differ because while the police officers did initiate a traffic stop on Walker, they smelled marijuana on Walker before they searched the vehicle. Walker also indicated to the officers that they could keep the weed and the gun if they issued him a ticket, instead of arresting him. During his testimony, Walker claimed, without any evidence to substantiate his claim, that the body-camera footage has been edited by the police.

{¶ 19} The facts in this case are analogous to the facts in *State v. Richmond*, 2017-Ohio-2860 (8th Dist.) where the officers smelled marijuana on the appellant. Quoting *State v. Moore*, 90 Ohio St.3d 47 (2000), the court in *Richmond* stated:

> "[T]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement. There need be no other tangible evidence to justify a warrantless search of a vehicle."

*Id.* at ¶ 14, quoting *Moore* at 48.

**{¶ 20}** The Court in *Moore* reiterated that point when it further stated:

According to defendant, there must be other tangible evidence of drug use in order to justify a search. We disagree . . . . [I]f the smell of marijuana, as detected by a person who is qualified to recognize the odor, is the sole circumstance, this is sufficient to establish probable cause. There need be no additional factors to corroborate the suspicion of the presence of marijuana.

. . .

Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement.

*Richmond* at ¶ 15, citing *id*. at 51.

**{¶ 21}** Walker further argues that his vehicle should not have been towed and impounded. He cites the decision in *State v. Leak*, 2016-Ohio-154, to support his contention. In *Leak*, the appellant was arrested on a warrant following a domestic-violence incident. Immediately prior to his arrest, he was a passenger in a car legally parked on a public street. *Id*. at ¶ 1. The officer made contact with the appellant, ordered him out of the car, arrested him, and placed him in the back of his patrol car. After the appellant was arrested, the officer checked the Law Enforcement Automated Data System and found that the person who was in the driver's seat of the car did not have any outstanding warrants. The officer nevertheless went back to the car, got the driver and the other passenger out of the car, called to request a tow of the car, and conducted an inventory search of the car. During this search, the officer found a handgun under the passenger seat of the car. *Id*. at ¶ 6.

{¶ 22} The Court in *Leak* examined the second exception to the constitutional prohibition on warrantless searches, those conducted in the service of law enforcement's community-caretaking function, stating:

> This function is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). In the interest of public safety, as part of the community-caretaking function of police, vehicles are frequently taken into police custody. *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976), citing *Cady* at 441. Examples of vehicles taken into custody as part of law enforcement's community-caretaking role include those that have been in accidents, those that violate parking ordinances, those that are stolen or abandoned, and those that cannot be lawfully driven. *See id*. at 368-369. The authority of police to seize and remove from the street vehicles that impede traffic or threaten public safety and convenience is beyond challenge. *Id*. at 369.

*Id*. at ¶ 20.

{¶ 23} Inventory searches performed pursuant to standard police procedure on cars taken into the custody of the police as part of a community-caretaking function are reasonable. *Id*. at ¶ 21, citing *id*. at 373. "There are three main objectives to inventory searches: (1) protecting an individual's property while it is in the custody of the police, (2) protecting the police from claims of lost or stolen property, and (3) protecting the police from danger." *Id*., citing *id*. at 369.

{¶ 24} The Supreme Court of Ohio has noted that inventory searches of lawfully impounded vehicles are reasonable under the Fourth Amendment when performed in accordance with standard police procedure when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary

search of the impounded vehicle. *Id.* at ¶ 22, citing *Blue Ash v. Kavanagh*, 2007-Ohio-1103, ¶ 11; *State v. Robinson*, 58 Ohio St.2d 478, 480 (1979), citing *Opperman*.

{¶ 25} The Court in *Leak* reasoned that

> [i]t is also undisputed that Leak was in the passenger seat when the arresting officer approached the car and that the person in the driver's seat of the car had a "clean license." There is nothing in the record to indicate that the car could not be lawfully driven away by the person who was in the driver's seat at the time of Leak's arrest. There is no indication in the record that the car was connected to Leak's offense of arrest. There is no indication in the record that the car had been parked in the same spot in excess of 48 hours. There is no indication in the record that the vehicle was going to be left unattended after Leak's arrest.

*Id.* at ¶ 26.

{¶ 26} However, the facts in this instant case are different than those in *Leak*. In this case, Walker was the driver and legal owner of the vehicle. He admitted to police that there was "weed" and a gun in the vehicle. The car was connected to Walker's offense of arrest. Additionally, the trial court did not use community-caretaking function as the officers' reason for impounding Walker's vehicle. The trial court stated, in its journal entry: "The search incident to a lawful arrest exception has two rationales: Officer safety and safeguarding evidence that the arrestee might conceal or destroy." Journal Entry No. 193182367 (Mar. 10, 2025.)

{¶ 27} "As the Ohio Supreme Court has acknowledged, '[t]he inventory-search exception is a well-defined exception to the Fourth Amendment's warrant requirement.'" *State v. Nixon*, 2023-Ohio-3457, ¶ 13 (9th Dist.), quoting *State v.*

*Banks-Harvey*, 2018-Ohio-201, ¶ 20, citing *Illinois v. Lafayette*, 462 U.S. 640, 643, (1983).  As previously stated:

> "[A] routine inventory search of a lawfully impounded vehicle is not unreasonable within the meaning of the Fourth Amendment when performed pursuant to standard police practice and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle."

*Id.,* quoting *Kavanugh*, 2007-Ohio-1103, ¶ 11, citing *Opperman*, 428 U.S. 364, 368 (1976).

{¶ 28} "'To determine if an inventory search is valid, the court must first determine whether the police lawfully impounded the vehicle.  A vehicle can be lawfully impounded when the occupant of the vehicle is arrested.'"  *Id.* at ¶ 14, quoting *State v. Neal*, 2012-Ohio-2609, ¶ 7 (9th Dist.), quoting *State v. Robinson*, 2000 Ohio App. LEXIS 4920, *3 (9th Dist. Oct. 25, 2000).  "Next, a court must determine 'whether the impoundment was merely a pretext for an evidentiary search of the impounded vehicle.'"  *Id.*, quoting *Kavanagh* at ¶ 12.  "'This Court has rejected a challenge to the impoundment of a vehicle when there was no evidence of a pretextual motive, and the impoundment was conducted pursuant to standard police procedure.'" *Id.*, quoting *Neal* at ¶ 7.

{¶ 29} Given the facts that the police officers smelled marijuana on Walker's person, he had just exited his vehicle, and he admitted that there was weed and a gun in the car, the officers lawfully searched and impounded Walker's vehicle for their safety and to safeguard any evidence that could be concealed or destroyed.  We

determine from this record that the trial court did not err when it denied Walker's motion to suppress.

{¶ 30} Therefore, Walker's first assignment of error is overruled.

### III. Admitted Evidence

#### A. Standard of Review

{¶ 31} "'Generally, evidentiary rulings made at trial rest within the sound discretion of the trial court. We give substantial deference to the trial court [absent] an abuse of discretion . . . [which] will not be found when the trial court makes the correct decision, however, gives the wrong reason . . . .'" ( Citations omitted.) *State v. Heineman*, 2016-Ohio-3058, ¶ 50 (8th Dist.), quoting *State v. Darkenwald*, 2004-Ohio-2693, ¶ 12 (8th Dist.). A court commits an abuse of discretion by "exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah,* 2021-Ohio-3304, ¶ 35.

#### B. Law and Analysis

{¶ 32} In Walker's fourth assignment of error, he argues that the trial court erred by admitting certified copies of the journal entries after the State rested its case and over defense objection. Once the State rested its case, the trial court asked if the stipulation to Walker's prior offense should be in the jury instructions or just something that the trial court can verbally advise the jury. Tr. 248. Walker's trial counsel stated: "I mean, I guess I should have mentioned this in my Rule 29 motion, but the prosecutor never entered it into evidence. We had a stipulation, but —." *Id*. The State interrupted, stating: "Your Honor, my understanding is with the

stipulation was to the identify and the contents of it as a whole. It's a self-authenticating journal entry." *Id.* However, Walker's counsel countered by stating it was supposed to be done in front of the jury. The State responded, stating:

> My understanding is we did not have to, it's a stipulated-to document that they would have received as an exhibit. We also heard testimony that he has the prior conviction as well through Officer Woods. It's not a document that they would be receiving the information of itself for the first time. We've heard testimony, it's been stipulated to and it would be considered by the jury.

Tr. 248-249.

{¶ 33} The trial court responded: "We do have a stipulation as part of the record. And the certified copies of the plea and conviction were entered into evidence without objection from defense counsel." Tr. 249. Walker's trial counsel responded that he stipulated but it was never presented to the jury. *Id.* The trial court allowed Walker's trial counsel to renew his Crim.R. 29 motion to dismiss based upon the fact that the stipulation to the journal entries were never presented to the jury. He clarified that he objected to the admission of the entries, not their authentication. Tr. 253. The trial court, again, denied the motion. Tr. 254.

{¶ 34} "R.C. 2945.75(B)(1) specifies what is necessary to prove a prior conviction." *State v. Leak*, 2016-Ohio-154 It provides:

> Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction.

R.C. 2945.75(B)(1).

{¶ 35} The State did not have to present the stipulations to the jury. As the Court reasoned in *Tate*, quoting *State v. Gwen*, 2012-Ohio-5046, ¶ 14, "R.C. 2945.75(B)(1) sets forth one way to provide 'sufficient' proof of a prior conviction, but does not provide the only method to prove it. For example, an offender may, and often does, stipulate to a prior conviction to avoid the evidence being presented before a jury." *Id.* Additionally, "[t]he state can prove the prior convictions by either following the requirements of R.C. 2945.75 or by receiving a stipulation from the defendant." *State v. Walker*, 2022-Ohio-1238, ¶ 16 (8th Dist.).

{¶ 36} Walker argues that he stipulated only to the journal entries but did not stipulate that the element of a prior conviction was established. However, Walker's assertion is incorrect. Before the trial, the State stated: "Based upon the conversation, I do believe Mr. Walker and counsel will be stipulating to Exhibit 1 and Exhibit 2. Those are certified journal entries of Mr. Walker's prior conviction." Tr. 44. Walker's trial counsel responded, "Yes, Judge my client does admit and stipulate to the fact that he is the person that was in fact convicted of drug possession in Case 590759." Tr. 44-45. Thus, Walker stipulated that he was in fact the defendant that had a prior conviction for drug possession, that was presented to the trial court on a certified copy of a judgment entry. Therefore, we find that sufficient evidence of Walker's prior conviction was established. Furthermore, the State was not required to present the stipulation to the jury.

{¶ 37} Therefore, Walker's fourth assignment of error is overruled.

## IV. Crim.R. 29 Motion for Acquittal

### A. Standard of Review

{¶ 38} Crim.R. 29(A)1 provides that a court "shall order the entry of the judgment of acquittal of one or more offenses . . . if the evidence is insufficient to sustain a conviction of such offense or offenses." A Crim.R. 29 motion questions whether the evidence is sufficient to establish beyond a reasonable doubt the elements necessary to support the convictions. "[W]e apply the same standard of review to a trial court's ruling on a Crim.R. 29 motion as we do in reviewing challenges to the sufficiency of the evidence presented at trial." *State v. McQuisition*, 2024-Ohio-3011, ¶ 24 (8th Dist.), citing *Fairview Park v. Peah*, 2021-Ohio-2685, ¶ 37 (8th Dist.).

{¶ 39} The appellate court's purpose when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, "would convince the average mind of defendant's guilt beyond a reasonable doubt." *Id.* at ¶ 25, quoting *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.,* citing *id.* at paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307 (1979). "'In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.'" *Id.*, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

### B. Law and Analysis

{¶ 40} In Walker's second assignment of error, he argues that the trial court erred when it denied his motion for acquittal under Crim.R. 29 because the State failed to present sufficient evidence to establish his guilt with regard to all of the weapons-related charges. Walker denies that he knowingly had a weapon in the vehicle that was found under the seat. During his trial testimony, Walker testified that his girlfriend had been driving the car and while he realized a gun might be there, he was not actually aware of it. Walker was found guilty of having a weapon while under disability, in violation of R.C. 2923.13(A)(3); carrying a concealed weapon, in violation of R.C. 2923.12(A)(2); and two counts of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B) and (D)(1).

{¶ 41} R.C. 2923.13(A)(3) states, in part:

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if [t]he person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

{¶ 42} R.C. 2923.12(A)(2) states, in part: "No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, a handgun other than a dangerous ordnance."

{¶ 43} R.C. 2923.16(B) and (D)(1) state, in part:

No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle. . . . No person shall knowingly transport or have a loaded handgun in a motor vehicle

if, at the time of that transportation or possession [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them.

{¶ 44} Walker argues that he did not knowingly violate any of the above statutes. However, "'[a] person has knowledge of circumstances when the person is aware that such circumstances probably exist.'" *State v. Shaw*, 2018-Ohio-403, ¶ 17 (8th Dist.), quoting *State v. Straley*, 2014-Ohio-2139, ¶ 11, quoting *Black's Law Dictionary* 1004 (10th Ed. 2014). "In determining whether the defendant acted knowingly or purposely, the jury may infer the defendant's state of mind from the surrounding circumstances." *Id.*, citing *State v. Sharp*, 2016-Ohio-2634, ¶ 19, (8th Dist.), citing *State v. Rock*, 2014-Ohio-1786, ¶ 13 (3d Dist.). A person acts "knowingly," regardless of their purpose, if they are aware that their conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. *State v. Holmes*, 2026-Ohio-736, ¶ 23 (8th Dist.); R.C. 2901.22(B).

{¶ 45} The record reveals that Walker was aware that his girlfriend purchased a gun. He was also aware that she drove his car and may have put the gun in his car. Upon being detained by the police, Walker stated to the police that they could take the weed and gun and could just give him a ticket. He also told police that his girlfriend bought him the gun. Given Ofc. Woods's testimony, the testimony presented at trial from the body-camera footage, and Walker's own trial testimony, there was sufficient evidence presented that Walker knew that the gun was in the car and that he also had knowledge of circumstances when he was aware that such

circumstances, a gun in the vehicle, probably existed. Furthermore, the gun was under the driver's seat in Walker's immediate reach, accessible without him leaving the vehicle.

{¶ 46} In regards to the weapons-while-under-disability count, Walker stipulated to having a conviction for a prior offense.

{¶ 47} Therefore, Walker's second assignment of error is overruled.

## V. Manifest Weight of the Evidence

### A. Standard of Review

{¶ 48} A challenge alleging that convictions are against the manifest "'[w]eight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other . . . . Weight is not a question of mathematics but depends on its effect in inducing belief."'" *State v. Hughes-Davis*, 2025-Ohio-3151, ¶ 24 (8th Dist.), quoting *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The Ohio Supreme Court has reminded us that when conducting a manifest-weight review, we "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, 2023-Ohio-4703, ¶ 14, citing *Eastley* at ¶ 20. As such, a manifest-weight-of-the-evidence challenge will be sustained "'"only in the exceptional case in which the evidence weighs heavily against the

conviction.'"'" *State v. Dodson*, 2025-Ohio-1733, ¶ 12 (8th Dist.), quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

### B. Law and Analysis

{¶ 49} In Walker's third assignment of error, he contends that his convictions for the weapons charges are against the manifest weight of the evidence. Walker stated in his brief that all the same reasons that support dismissal of the convictions also support a finding that the convictions are against the manifest of the evidence. On this record, the evidence reveals that Walker knew or probably knew that a gun was in his vehicle by stating to Ofc. Woods that the officers could keep the gun and the weed if they wrote him a ticket. Tr. 204. Although Walker made allegations that the police video was altered, there was no evidence presented on this record that the police altered the video.

{¶ 50} With respect to a witness's credibility, when conducting a review under a manifest-weight challenge, we are mindful of the presumption in favor of the finder of fact and "'"[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."'" *State v. Gilmore*, 2026-Ohio-577, ¶ 22 (8th Dist.), quoting *Parma Hts. v. Brett*, 2025-Ohio-4, ¶ 21 (8th Dist.), quoting *In re Z.C.*, 2023-Ohio-4703, at ¶ 14. The rationale of giving deference to the findings of the finder of fact is that "the finder of fact is in the 'best position to view the witnesses and observe their demeanor, gestures, and voice inflections that are critical observations in

determining the credibility of a witness and his or her testimony.'" *Id.*, quoting *State v. Jones*, 2025-Ohio-2866, ¶ 47 (8th Dist.), quoting *State v. Sheline*, 2019-Ohio-528, ¶ 100 (8th Dist.).

{¶ 51} Given the testimony at trial, the body-camera footage, and Walker's admission that his girlfriend could have placed the gun in the car, we cannot determine that the jury lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

{¶ 52} Therefore, Walker's third assignment of error is overruled.

{¶ 53} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

LISA B. FORBES, P.J., and
EILEEN T. GALLAGHER, J., CONCUR